# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LATONYA PYATT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SANTANDER CONSUMER USA INC., )<br>et al., )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 8:18-cv-03635-PWG |

### DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
### MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Equifax Information Services LLC ("Equifax"), by Counsel, hereby files its Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as follows:

### INTRODUCTION

Plaintiff alleges in the Second Amended Complaint that Equifax violated two sections of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. First, Plaintiff alleges that Equifax violated § 1681e(b) (Reasonable Procedures) by including an account with NCB Management Services ("NCB") on "credit reports and credit files [it] published and maintained," (Doc. 54 ¶¶ 76-82). Second, Plaintiff alleges that Equifax violated § 1681i(a) (Reasonable Reinvestigation) by failing to conduct a reasonable reinvestigation of her dispute of that account (*Id.* ¶¶ 83-98). Plaintiff's Second Amended Complaint, however, fails because she still does not plead that the NCB account was actually inaccurate, an essential element of both §§ 1681e(b) and 1681i(a) of the FCRA. Accordingly, Equifax again respectfully requests the Court grant its Motion to Dismiss and grant all other relief as the court deems appropriate.

1

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Thompson v. Dollar Tree Stores, Inc.*, No. PWG-17-3727, 2019 WL 414881, at *1–2 (D. Md. Feb. 1, 2019) (citing *Velencia v. Drezhlo*, No. RDB–12–237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012)). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

**ARGUMENT AND CITATION TO AUTHORITY**

Plaintiff fails to state a claim under the FCRA because she fails to plead an actual, factual "inaccuracy" concerning the NCB account. Plaintiff alleges that Equifax violated the FCRA by allowing "inaccurate" information to appear on her credit report, specifically a collection account with NCB. (Doc. 54 ¶ 12). Plaintiff claims that the NCB collection account was "inaccurate" because "there was no balance owed to Santander due to Santander's failure to provide certain

required notices in compliance with [Md. Code Ann., Com. Law §12-1021 ("CLEC")]." (*Id.* ¶¶ 11, 13).

In the Second Amended Complaint, Plaintiff finally specifies which provision of the CLEC was allegedly violated by Santander. (*Id.*). That section, Md. Code Ann., Com. Law §12-1021, allows for the repossession and sale of tangible personal property (e.g., a vehicle) and provides that certain notices shall be provided to the consumer in connection with the repossession and sale of the property. However, Plaintiff still fails to specify exactly how that provision was violated, which allegedly "required notices" were not provided,[1] or when and how the allegedly required notices were to be provided. (*See* Doc. 54). Nor does she say how the alleged failure to send the unspecified notices affected the debt she owed to Santander.[2]

To be sure, in her Second Amended Complaint, Plaintiff finally adds a modicum of flesh to her prior bare bones legal arguments regarding her alleged legal defense to the collectability of the NCB account. (*Id.* ¶¶ 64-75). For example, Plaintiff states:

---

[1] E.g., whether it was the discretionary notice of repossession, §12-1021(c), the required notice of the right to redeem, 12-1021(e), the required notice of the time and place of sale, 12-1021(j)(1)(ii), the post-sale accounting required for private sales, 12-1021j(2), or the statement of distribution of the proceeds required for public sales, 12-1021k(3).

[2] A question that is capable of multiple answers. For example, if repossessed property is sold at a public sale, and the creditor does not provide a certain required notice, then creditor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement. Md. Code Ann., Com. Law §12-1021k(4). But the same does not hold true for private sales, unless the state Commissioner of Financial Regulation enters an order disallowing any claim for a deficiency balance. *Id.* §12-1021j(3). Moreover, the CLEC does not say that such creditors "cannot try to collect the deficiency by means other than a *judgment*." *Gardner v. GMAC, Inc.*, 769 F.3d 390, 395 (4th Cir. 2015) (emphasis added). In still other circumstances, a CLEC violation appears to prohibit some *collection* activities, but only of "interest, costs, fees, or other charges with respect to the loan" and the CLEC expressly continues to allow the collection of the principal. Md.Code Ann., Com. Law § 12–1018(a)(2). Of course, this is a question of state law that Equifax is unable to answer. Finally, some notices are discretionary, and, therefore, would not presumably trigger any impact on the creditor's ability to sue or collect on the debt, although, as with the above, this is a question of state law that Equifax is neither capable nor required to answer under the FCRA.

> Similarly, had Equifax and Trans Union investigated whether Santander provided the disclosures required by CLEC, then Equifax and Trans Union would have learned that *Santander did not provide the required disclosures*, or Equifax and Trans Union would have been unable to *verify whether Santander sent the required disclosures*.

(*Id.* ¶ 66) (emphasis added). However, even if Plaintiff had fully briefed her legal arguments, complete with footnotes and exhibits, in her Second Amended Complaint, and, *more importantly*, in her dispute letters to Equifax, the analysis and, hence, the result is the same.[3] Plaintiff is not stating a factual dispute; to the contrary, Plaintiff is attempting to state a legal defense to the collectability of the NCB account. Simply put, Plaintiff's claim that the NCB account is "inaccurate" relies upon an alleged legal defense to the collectability of the account (before it was transferred to NCB); that is, Plaintiff is lodging a collateral attack on the debt being reported by NCB. In fact, Plaintiff's collateral attack does not even go to the legal validity of the underlying debt (e.g., whether it was supported by adequate consideration under Maryland contract law, etc.), but rather her collateral attack goes to whether Santander violated certain state notice requirements in connection with a repossession that prohibit it from collecting on an otherwise valid underlying debt.

A plethora of courts across the nation have held that CRAs such as Equifax are not obligated, under the FCRA, to delve into the legal validity of the debts reported to them by creditors. *See Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 891 (9th Cir. 2010) ("[C]redit reporting agencies are not tribunals. They simply collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract disputes, courts have

---

[3] Such a brief would be more properly submitted to a Maryland court adjudicating Plaintiff's defense to repayment in a collections action. Before such a court acted on such a brief, it would have requested an opposition brief, taken evidence (if necessary, through the issuance of subpoenas), weighed the evidence, researched precedent, and then issued an opinion. Equifax is not required to make, nor is it capable of, such an undertaking.

been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims.") (citing *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008)); *Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015) (CRAs not required to "resolve legal disputes about the validity of the underlying debts they report."). Whether NCB was barred from collecting the debt because of the prior holder's failure to provide certain notices required by the Maryland CLEC, "is a question for a court to resolve in a suit against [NCB,] not a job imposed upon consumer reporting agencies by the FCRA." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *see also Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (holding that a § 1681i claim "is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation") (emphasis in original).[4]

---

[4] In addition to these appellate decisions, *see also, e.g.*, *Thomas v. Hyundai Capital America*, 2018 WL 4899074, at *4 (D. Colo. Oct. 9, 2018) ("For the Equifax Defendants to have found that the information provided by Defendant HMF was inaccurate, they would have had to determine that Plaintiff did not owe the Fees claimed by Defendant HMF under their contract. Resolving the contract dispute is something that the Equifax Defendants were not equipped or required by law to do."); *Pembroke v. Trans Union LLC*, 2017 WL 6463254, at *5 (D. Colo. Dec. 19, 2017) ("Mr. Pembroke's legal disputes . . . are not disputes that the CRA Defendants are required or equipped to resolve in the first instance. Mr. Pembroke's contentions that they do so amount to nothing more than a collateral attack on the legal validity of his debt."); *Jones v. Penn. Higher Ed. Assist. Agnc'y*, 2017 WL 4594078, at *5 (C.D. Cal. July 24, 2017) ("Here, as in *DeAndrade*, Plaintiff collaterally attacks the 2002 loan's legal validity—by arguing that it is not her responsibility per the 2002 divorce judgment—through the FCRA and related claims, rather than pinpoints a factual inaccuracy Defendant should have detected in Plaintiff's credit reports."); *Pagazani v. Equifax Info. Servs. LLC*, 2016 WL 2997586, at *6 ("Ultimately, Equifax could not have resolved Pagazani's legal dispute with BOA through a reasonable reinvestigation, pursuant to sections 1681e(b) and i(a). This is the only pertinent inquiry at this stage. Accordingly, Plaintiff's FCRA claims cannot survive Defendant's Motion.") (citation omitted); *Brill v. Trans Union LLC*, 2015 WL 9095103, at *3 (W.D. Wis. Dec. 16, 2015) ("As Trans Union notes, federal courts consistently hold that the FCRA does not impose a duty on credit reporting agencies to verify the validity of the underlying debt when conducting reinvestigations."); *Prianto v. Experian Info. Solutions, Inc.*, 2014 WL 3381578, at *7 (N.D. Cal. July 10, 2014) ("Plaintiff does not argue

Simply put, Plaintiff has failed to plead an actual, *factual* inaccuracy with regard to the NCB account. Accuracy is an essential element of a cause of action under both §§ 1681e(b) and 1681i(a) of the FCRA. The United States Court of Appeals for the Fourth Circuit has interpreted § 1681e(b) to include an inaccuracy requirement, and a plaintiff must show both "(1) the consumer report contained inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). Further, "although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts . . . have imposed such a requirement." *Carvalho*, 629 F.3d at 890 (collecting cases). Courts in the Fourth Circuit are no exception. *See Alston v. Equifax Info Servs. LLC*, No. 13-cv-1230, 2016 WL 5231708, at *7 (D. Md. Sept. 21, 2016) (collecting cases). As set forth above, Plaintiff does not plead an actual, *factual* inaccuracy with respect to the NCB account. As her §§ 1681e(b) and 1681i(a) claims against Equifax are premised solely on her allegation that the NCB account was inaccurately reporting, her claims against Equifax should be dismissed.

---

that Experian's reporting of his section 580b debt is facially inaccurate. Instead, Plaintiff attacks the latent accuracy of the debt because . . . he contends that Experian's reporting of the debt's existence without explaining that it is subject to section 580b's anti-deficiency bar is materially misleading. The Ninth Circuit's reasoning in *Carvalho* compels the Court to find that Plaintiff's claims against Experian under this materially misleading theory fail as a matter of law."); *Omar v. Experian Info. Solutions, Inc.*, 2012 WL 2930778, at *6-8 (S.D. Ind. July 18, 2012) ("Mr. Omar effectively asks Experian to make a legal determination about the validity of the debt flowing from his lease with Williamsburg Way. . . . However, Mr. Omar's quarrel is directed towards the wrong party. Rather than addressing this issue directly with Experian, Mr. Omar should have remedied the situation with Williamsburg Way or NCS."); *Fashakin v. Nextel Communications*, 2009 WL 790350, at *11 (E.D.N.Y. Mar. 25, 2009) ("[P]laintiff's dispute of the debt turned on a collateral attack on the validity of the debt that could only be resolved with [the data furnisher] . . . ."); *Wadley v. Experian Info. Solutions, Inc.*, 396 F. Supp. 2d 677, 679-80 (E.D. Va. 2005) (granting motion for summary judgment where plaintiff was "attempting to collaterally attack the basis of accurately reported information" in his credit file by arguing that he was not obligated to pay a car loan because the car was defective).

**<u>CONCLUSION</u>**

For the reasons discussed here, Equifax respectfully requests the Court grant its Motion to Dismiss and grant all other relief as the court deems appropriate.

Respectfully submitted this 29th day of March, 2019.

        */s/ Nathan D. Adler*
        Nathan Daniel Adler, Esq.
        Bar No: 22645
        Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
        One South Street, 27th Floor
        Baltimore, Maryland 21202-3201
        (410) 332-8516
        (410) 332-8517 - Fax
        nda@nqgrg.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system:

Kevin Charles Williams
Law Office of Kevin Williams
8025 13th Street
Suite 107
Silver Spring
Silver Spring, MD 20910

Robert J. Schuckit
Scott E Brady
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077

Imoh Emmanuel Akpan
George Calvin Awkward, III
Franklin and Prokopik PC
Two N Charles St Ste 600
Baltimore, MD 21201

Alexander Richard Green
LeClairRyan
2318 Mill Road
Suite 1100
Alexandria, VA 22314

Edward A Pennington
Smith Gambrell and Russell LLP
1055 Thomas Jefferson St NW Ste 400
Washington, DC 20007

*/s/ Nathan D. Adler*
Nathan Daniel Adler